UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **FREDDIE JACKSON,** | * | |
| Plaintiff, | * | CIVIL ACTION NO.3-15-CV-00490 |
| v. | * | JUDGE JAMES J. BRADY |
| **LOUISIANA DEPARTMENT OF** | * | * |
| **OF PUBLIC SAFTEY AND CORRECTIONS,** | * | MAG. RICHARD L. BOURGEOIS |
| **LOUISIANA CORRECTIONAL INSTITUTE** | * | JURY TRIAL DEMANDED |
| **FOR WOMAN** | * | |
| Defendant, | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

### FIRST AMENDED COMPLAINT

This is the First Amended Complaint of FREDDIE JACKSON, a person of the full age of majority and domiciled in Ascension Parish , State of Louisiana. This action is brought under LA R.S. 23:312 and LA R.S. 23:332 and Title VII of the Civil Rights Act of 1964, as amended Title I of the Civil Rights Act, retaliation 42 U.S.C. 12203 and the Family Medical Leave Act (FMLA) to correct the unlawful employment practices and to provide appropriate relief to the Plaintiff FREDDIE JACKSON ("Plaintiff" or "Jackson") who was adversely affected by such practices. Plaintiff, an African-American male over the age of forty, was subjected to discrimination due to a failure to promote by the Department of Public Safety and Corrections, Louisiana Correctional Institute for Woman ("Defendant" or "Employer"). More than thirty days prior to the institution of this action JACKSON filed a charge with the United States Equal

1

Employment Opportunity Commission ("EEOC") alleging violations under Title VII, Retaliation and Louisiana Discrimination laws LA R.S. 23:312 and LA R.S. 23:332 by the Employer. He was given a Right to Sue letter. All conditions precedent to the institution of this lawsuit have been fulfilled. Additionally, Plaintiff brings a claim for violation of the Family Medical Leave Act (FMLA), specifically, as it relates to retaliation under the act. At all times, the events that gave rise to this action were committed by the Defendant who resides in East Baton Rouge Parish with respect represents:

The Plaintiff held the position of Captain at LCIW and was seeking a promotion to a position of Corrections Major that was posted on May 16, 2013. Plaintiff was denied the position because of his race and age. To remedy the unfair discriminatory practice and the unjust treatment of retaliation for filing a claim with the EEOC, Plaintiff files the instant suit. The specifics alleged are detailed below:

## **JURISDICTION AND VENUE**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Sects.451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sect. 2000e-(f)(1).

2. The employment practices alleged to be unlawful were at all material times committed within the jurisdiction of the United States District Court for the Middle District of Louisiana.

**1.**

The following are named defendants:

A. LOUISIANA DEPARTMENT OF PUBLIC SAFETY is an agency or arm of the State of Louisiana which is in charge of the Louisiana State Prisons, namely the Louisiana Correctional Institute for Women (LCIW) in St. Gabriel, Louisiana which employs more

than 15 employees. The Department of Public Safety is located in East Baton Rouge Parish.

B.  LOUISIANA CORRECTIONAL INSTITUTE FOR WOMAN is the name of the Louisiana State Prison in which the facts and circumstances that gave rise to this lawsuit occurred which is located in Iberville Parish, State of Louisiana.

**2.**

That the aforesaid Defendants are jointly and solidarily liable and justly and truly indebted unto your petitioner in the amounts from the date of judicial demand until paid, plus the costs of this proceeding, for this to wit:

**3.**

That on or about June 3, 2013, petitioner FREDDIE L. JACKSON was intentionally and maliciously discriminated against by his employer LCIW by denying him a promotion based on his race and age. On May 16, 2013, LCIW posted a position for a Corrections Major Position. Plaintiff, having over 19 years of experience with the Department of Public Safety and Corrections as a corrections supervisor, applied for the position. Plaintiff made his application on May 16, 2013.

**4.**

Plaintiff was interviewed for the position. According to the Department of Public Safety and Corrections 10 applicants applied for the position.  However, of the ten candidates, four were interviewed for the position, namely Jeremy Avaant (W/M), Shaun Brown (B/F), Laurita Woods (B/F) and the Plaintiff. Plaintiff had the most experience and worked for the Department of Corrections longest.

**5.**

On June 10, 2013, an email went out announcing Jeremy Avants from Elyan Hunt Correctional Center to the position of Major at LCIW.

**6.**

Despite the announcement that went out to the entire prison on June 10, 2013, it was eight days later, on June 18, 2013 before Plaintiff received a personal email indicating that Jeremy Avants was selected for the position.

**7.**

Two employees told the Plaintiff that in April of 2013, before the position was even announced, Deputy Warden Moore at LCIW told Jeremy Avants he was promised the position. Major Russ at Elayne Hunt Correctional Center stated that Deputy Warden Moore called and asked Avants to apply. This was two days before the position was posted. Even further, Avants was brought in on the day of his interview and was called into a private meeting with D.W. Moore and prepped at least 45 minutes before his interview. No one from the panel or D.W. Moore met with the Plaintiff to prepare Plaintiff for his interview.

**8.**

After the interview, Avants acknowledged to Major Russ that he didn't do well on the interview and in fact could not answer a few questions like "what does CCR stand for?" Yet Avants, who is younger than the Plaintiff, received the position. In fact, Plaintiff had more experience than Avants, more training, and Plaintiff had more experience working directly at LCIW than Avants. Plaintiff had worked at LCIW from January 2007 to May 2007 and was

currently working there at the time of his interview. Nevertheless, Avants, who was working at another prison, was hired. Thus, there was no legitimate reason for Avants to be selected for the position other than that of his race (White) and age (under 40).

**9.**

Outraged by the discrimination, Plaintiff filed a charge of discrimination with the EEOC. Little did the plaintiff know, his action to report the unlawful discrimination by defendant would set into motion a series of retaliatory acts from the Defendant in violation of 42 U.S.C.12203. After the filed charge Plaintiff was subjected to different terms and conditions of employment which made his daily working conditions unbearable and hostile. He was written up (received Letters of Instructions) twice unjustly by Colonel Melanie Zedlitz,  he was required to shorten his vacation by one day to allow a co-worker to take their full vacation, he was placed on the night shift, he was instructed to exit his office if a female employees entered his office, he was denied a new uniform in its proper size to humiliate Jackson for almost two years,  he denied funeral leave as is provided by the defendant's policy, he was threatened with the possibility of losing his job at the women's prison and cautioned that he should return to the men's prison, he was falsely  accused by management of calling women at the prison "bitches and whores" without any proof being presented, he was denied 2 days of compensatory time and K-leave and funeral leave in contrast to Defendant's policy,  and he was required to return to work with an essential functions form and doctor's excuse for intermittent leave each time he was off, whereas the female officer Sgt. Dawn Dixon was not required to do the same.

5

**10.**

Additionally, the Plaintiff was retaliated against for utilizing FMLA leave in the year of 2014. Because of Plaintiff's usage, Jackson was denied a previously planned, requested and approved vacation on January 8, 2015 by Major Miles. Plaintiff had acquired 25 days of vacation. This was a violation of FMLA.

**11.**

On October 31, 2013, Plaintiff was unjustly subjected to Letter of Instruction and accused of not following orders in regards to an inmate. Also, Plaintiff Jackson was accused of having made inappropriate comments to Cadet Shannon Oby-Grant, a possible code of ethics violation, while the door was closed to his office. Cadet Oby-Grant stated by written correspondence to the Plaintiff that she never made such accusations. Because Cadet Oby-Grant refused to provide a false statement against Jackson, Cadet Oby-Grant was let go from LCIW. The Defendant provided unfair Letters of Instructions to the Plaintiff for each of these situations and placed those in his personnel file as a form of retaliation. Jackson was given two (2) days suspension which was a loss of almost $800 in pay.

**12.**

On December 9, 2013 while on vacation, Plaintiff received a phone call from Col. Zedlitz that his vacation was being cut short and that he needed to return to work on December 20, 2013. Also, he would be assigned to the night shift. His early return was required because Captain S. Brown (female) needed start her vacation. AW Harris and Human Resources shortened his vacation which caused the Plaintiff to be stuck working Christmas that year when he would have been scheduled off that year.

**13.**

On January 10, 2014, Col. Zedlitz told the Plaintiff to exit his office whenever a female officer entered. This order made it difficult for the Plaintiff to do his job because he was a supervisor at a women's prison.  Now, the Plaintiff could no longer conduct confidential conversations with his subordinates to provide instruction and perform job evaluations.

**14.**

In March of 2013, LCIW requested uniform sizes for all employees.  While Plaintiff was out on leave his supervisor ordered a size 32 pants when Plaintiff actually wore a size 40. Jackson went to the warehouse to exchange the pants find that there was only a size 46 left. This size pant was too big for Jackson.  Nevertheless, he tried to make the pants work. When Jackson put his keys, radio, swipe pipe and handcuffs on his belt, Jackson's pants constantly fell down. Jackson was humiliated and therefore went back to the old Class A uniform that fit him properly. Continuously, Jackson requested a new uniform.  First, AW Thibeaux told Jackson "you are going to have to wear what you have because I am not ordering anymore until next year." In November of 2014, Lt. Col. Falgout indicated that he would order the Plaintiff a new uniform and charge it to the state credit card.  DW Moore used her power and canceled that order. Jackson, a supervisor, was embarrassed and ashamed having to wear the old uniform.  All the supervisors had new uniforms except Jackson. This went on for almost two years.

**15.**

Jackson was denied compensatory/K-leave/funeral leave.  Whereas, female employees, like Sgt. Lakesha Corbin, Captain Brenda Bazille and Major Edith Pedescleaux and Master

Sergeant Dawn Dixon were given the funeral leave they requested. Jackson's leave was denied upon his request. This was more retaliation and a violation of the Defendant's own policy.

**16.**

That as a result of the incident aforesaid, FREDDIE JACKSON received injuries to his mind and body which has resulted in physical and mental pain and suffering, mental distress, loss of income, loss in future income, loss to his retirement and anguish and medical expenses. Plaintiff is entitled to an amount commensurate with the damages sustained and with said amount to be determined by the trier of fact.

**17.**

Plaintiff requests a jury trial in this matter.

WHEREFORE, the Plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in discriminatory retaliation in its discipline and discharge practices and any other employment practices which discriminate on the basis of his age and race in violation of Title VII from retaliation and retaliation as it relates to the FMLA.

B. Order the Defendant Employer to institute and carry out policies, practices, and programs which are designed to prevent race and age discrimination and to eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant Employer to make whole Freddie Jackson by other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D. Order the Defendant Employer to make whole Freddie Jackson by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E. Order the Defendant Employer to make whole Freddie Jackson providing compensation for past and future pecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional pain, suffering, inconvenience, loss of past, present and future earnings, loss to retirement, loss to benefits, loss of enjoyment of life, reduction in his standard of living, lowered self-esteem and humiliation, in the amounts to be determined at trial.

F. Order the Defendant Employer to pay Freddie Jackson punitive damages for its malicious and reckless conduct, as described above, in the amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Plaintiff his court cost and attorney fees in connection with this action.

Respectfully submitted,

/s/ Yancy A. Carter
Yancy A. Carter
LA State Bar No. 24335
Law Office of Yancy A. Carter
Post Office Box 691442
Houston, Texas 77269
504-319-3625  Telephone
504-910-1480  Telecopier

## **CERTIFICATE OF SERVICE**

      The undersigned counsel for Plaintiff hereby certifies that a true and correct copy of the First Amended Complaint that was served pursuant to the Federal Rules of Civil Procedure on the 13th day of September 2015, via email, to the following:

            Margret A. Collier
            LA Department of Justice
            1885 N. Third Street, 4th Floor
            Post Office Box 94005
            Baton Rouge, Louisiana 70802
            Phone: 225-326-6402
            Fax: 225-326-6495

            Susan Griffin
            Attorney for Secretary of
            The Department of Public Safety and Corrections
            P.O. Box 94304 Capital Station
            Baton Rouge, Louisiana 70804-9304
            Phone: 225-342-6343

                         /s/ Yancy A. Carter
                         Yancy A. Carter
                         Attorney for Plaintiff