UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FREDDIE JACKSON                                         CIVIL ACTION

VERSUS

LOUISIANA DEPARTMENT OF PUBLIC                 15-00490-JJB-RLB
SAFETY AND CORRECTIONS, LOUISIANA
CORRECTIONAL INSTITUTE FOR WOMEN

**RULING**

Before the Court are two *Partial Motions for Summary Judgment* filed by the

Defendants, the Louisiana Department of Public Safety and Corrections and the

Louisiana Correctional Institute for Women (collectively "Defendants").[1]  Freddie Jackson

has filed an *Opposition* to the *Motions* to which the Defendants have filed a Reply.[2]  The

Court's jurisdiction exists pursuant to 28 U.S.C. § 1331.  Oral argument is unnecessary.

For the following reasons the Defendants' *Motions* shall be granted.

**I.      FACTS AND PROCEDURAL HISTORY**

In this removal action, Plaintiff Freddie Jackson ("Jackson") asserts claims against

his employer, the Louisiana Department of Public Safety and Corrections ("DPS&C") and

the Louisiana Correctional Institute for Women ("LCIW"), for discriminating against him

because of his race, age, and in retaliation for taking medical leave and filing a Charge

with the Equal Employment Opportunity Commission ("EEOC").[3]  Jackson began his

tenure as a corrections officer at Elayn Hunt Corrections Center ("EHCC") in 1993 as a

---

[1] Doc. 31 (*Motion for Partial Summary Judgment on Prescription and Prematurity*); and Doc. 32 (*Motion for Partial Summary Judgment* (on race discrimination and retaliation claims under the FMLA and Title VII).
[2] Doc. 43. Jackson also filed a *Surreply* which the Court considered in preparing this Ruling.  Doc. 46.
[3] Jackson admitted in his Opposition that none of his claims are premised on any alleged actions taken by Defendants in 2008.  Doc. 40, p. 11.

corrections cadet.[4]  During his tenure at EHCC, Jackson was promoted through the ranks to Lieutenant.[5]  Jackson also obtained his Bachelors of General Studies degree in 2012 from Nicholls State University.[6]

In January of 2013, Warden Jim Rogers hired Jackson to work at LCIW as a captain.[7]  Shortly after Jackson began working at LCIW, in May of 2013, he applied for a corrections major position.[8]  Jackson, along with six other applicants, including Captain Shawn Brown-Garrison ("Brown-Garrison"), an African American female, and Captain Jeremy Avants ("Avants"), a Caucasian male, were interviewed for the open position.[9]

The interview panel consisted of Assistant Warden Sibil Thibeaux, Assistant Warden Tenita Harris, Assistant Warden Darlene Carlin, and Deputy Warden Connie Moore.[10]  Each interviewer independently ranked her top interviewees for the position.[11]  All but Deputy Warden Moore listed Brown-Garrison as their top choice.[12]  Deputy Warden Moore, a white female, ranked Avants as her top choice.[13]  Because she believed that Avants was the better choice for the position, Deputy Warden Moore made the recommendation to Warden Jim Rogers that Avants be promoted to the position of

---

[4] Doc. 40-2, p. 6.
[5] Doc. 40-2, p. 6.  Jackson testified that he had been promoted to the rank of Lieutenant Colonel, but due to budget cuts, in December of 2010, he was forced to voluntarily demote to the lieutenant's position.
[6] Doc. 40-2, p. 5.
[7] Doc. 32-4, p. 4; Doc. 32-11, p. 1.
[8] Doc. 32-4, p. 5.  The position for major was posted on May 16, 2013.  Doc. 32-7, p. 5.
[9] Doc. 32-7, p. 17.
[10] Doc. 32-7, p. 7; Doc. 32-10, p. 1.
[11] Deputy Warden Moore explained that "[s]ome people just put first person and then their second choice… some people put first, second, third…."  Doc. 32-7, p. 20.  It simply depended upon the individual interviewer.  Doc. 32-7, p. 19.
[12] Doc. 32-8, p. 2; Doc. 32-9, p. 2; Doc. 32-10; p. 1.
[13] Doc. 32-7, pp. 20 and 27.

major.[14]  Warden Rogers approved the recommendation and hired Avants for the position.[15]  By June 18, 2013, Jackson learned he did not obtain the promotion.[16]

On August 8, 2013, Jackson filed a Charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that he had not been promoted because of his race and age.[17]  Subsequently, Jackson filed another Charge with the EEOC on January 14, 2014, alleging that he had been retaliated against for filing the August 2013 Charge.[18]  In his August 2013 Charge, Jackson claimed that the following retaliatory actions occurred:  he was issued two "Letters of Instruction" by Colonel Melanie Zedlitz; he was required to shorten his vacation time by one day so that Brown-Garrison could take her vacation; he was placed on the night shift; and he was instructed to exit his office whenever a female employee entered.[19]

On May 26, 2015, Jackson filed a *Petition* in the 19th Judicial District Court against Defendants alleging that they had discriminated against him because of his age and race in violation of Louisiana law, discriminated against him because of his race in violation of Title VII, and retaliated against him for filing an EEOC Charge in violation of Title VII.[20]  On July 27, 2015, Defendants removed the suit to federal court.[21]  On September 13, 2015, Jackson filed a *First Amended Complaint* wherein he asserted a Family Medical Leave Act ("FMLA") retaliation claim.[22]

---

[14] Doc. 32-7, pp. 20-28; 30-31; Doc. 32-11.
[15] Doc. 32-11, pp. 1-2.
[16] Doc. 32-4, p. 6.
[17] Doc. 32-5, p. 3.
[18] Doc. 32-6, pp. 3-4.
[19] Doc. 32-6, p. 3.
[20] Doc. 1-1.  The *Petition* states that a fax copy was received on May 26, 2015, and that the Original *Petition* was filed into the record on June 1, 2015.  Pursuant to La. R.S. 13:850, it appears to the Court that the May 28, 2015 date serves as the filing date in this case.
[21] Doc. 1.
[22] Doc. 5.

Defendants seek dismissal of Jackson's Title VII and FMLA claims as a matter of law because Jackson cannot prove his claims against them. Defendants also seek dismissal of Jackson's state law claims on the grounds of prescription. Jackson opposes the *Motions*.

## II.    SUMMARY JUDGMENT LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[23] "An issue is material if its resolution could affect the outcome of the action."[24] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[25] "A party moving for summary judgment 'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[26] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[27] However, the non-moving party's "burden is not satisfied with some metaphysical doubt as to the

---

[23] Fed. R. Civ. P. 56(a).

[24] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005)(quoting *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003)).

[25] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008)(citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[26] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D.La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986))).

[27] *Rivera v. Houston Independent School Dist.*, 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)(internal quotations omitted)).

material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[28]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[29]  The Court must resolve all reasonable factual inferences in favor of the nonmoving party.[30]  However, "[t]he court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[31]  "Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without 'any significant probative evidence tending to support the complaint.'"[32]

A.    *Motion for Partial Summary Judgment*: Juridical Entity and Prescription[33]

In this *Motion*, Defendants seek the dismissal of LCIW because it is not a juridical entity capable of being sued under Louisiana law.  Under Louisiana law, to possess capacity to be sued, an entity must qualify as a "juridical person."[34]  This term is defined by the Louisiana Civil Code as "… an entity to which the law attributes personality, such as a corporation or partnership."[35]  It does not appear that Jackson intended to name

---

[28] *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal quotations and citations omitted)).

[29] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[30] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

[31] *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)(citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

[32] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249)(citation omitted)).

[33] Doc. 31.  In his *Opposition*, Jackson conceded that he was not asserting any failure to promote claims from 2008.  Due to his concession, Defendants' argument on this point is moot.

[34] *Hall v. Louisiana*, 974 F.Supp.2d 957, 962 (M.D.La. 2013).

[35] La. C.C. art. 24.

LCIW as a Defendant, because he argues that "[t]he state is the real entity being sued."[36]

LCIW is a correctional center, a division of the Department of Public Safety and Corrections—Corrections Services. The Court has conducted its own review of the Louisiana Secretary of State's commercial database, and has found no corporate listing for LCIW. Therefore, the Court finds that LCIW is not a juridical entity capable of being sued. Accordingly, LCIW, only, shall be dismissed as a Defendant in this case. The Louisiana Department of Public Safety and Corrections shall remain a Defendant in this case.

Jackson alleged that DPS&C failed to promote him to the open position of major because of his age and race in violation of Louisiana state law, La. R.S. 23:312(A)(1) and 23:332(A)(1). Defendant DPS&C argues that these claims have prescribed. Jackson argues without explanation that the continuing violation theory keeps these claims alive.

Initially, the Court finds that the continuing violation theory is inapplicable to failure to promote claims. Such claims arise from a discrete action, and are not subject to the continuing violation theory.[37] The Court will now turn its attention to DPS&C's prescription argument.

In *Foreman v. Our Lady of Lourdes Regional Medical Center, Inc.*,[38] the United States District Court for the Western District of Louisiana explained the prescriptive periods for discrete discriminatory actions under the Louisiana Employment Discrimination Law as follows:

> Louisiana discrimination claims under the Louisiana Employment
> Discrimination Law ["LEDL"] have a one year prescriptive period. La. R.S.

---

[36] Doc. 40, p. 11.
[37] *Heath v. Bd. of Supervisors for S. Univ. and Agric.and Mech. Coll.*, 850 F.3d 731, 737 (5th Cir. 2017).
[38] *Foreman v. Our Lady of Lourdes Reg'l Med. Ctr, Inc.*, Civil Action No. 13-CV-780, 2013 WL 5410135 (W.D.La. Sept. 25, 2013).

23:303(D). Prescription under the Louisiana statute commences on the day the act of discrimination occurs. Alleged discriminatory actions by employers such as termination, demotion, and failures to promote are discrete acts, which put the employee on notice that he/she may have a claim. See, e.g., *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 550 U.S. 618, 628, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007)("termination, failure to promote, denial of transfer, [and] refusal to hire" are examples of such discrete employment acts), citing *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Under Louisiana law, the prescription period for such discrete discriminatory acts begins to run on the day the act occurred. *Krull v. Centurytel, Inc.*, 829 F.Supp.2d 474, 478 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002)("A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.").[39]

Jackson learned that he did not obtain the promotion to the open major position on June 18, 2013, at the latest.[40] Therefore, the prescription period began running on that date. On August 8, 2013, Jackson filed his EEOC Charge asserting his failure to promote claims on the basis of race and age.[41] Pursuant to La. R.S. 23:303(D), Louisiana law recognizes a suspension of the one year prescriptive period during the pendency of any administrative review by the EEOC or the Louisiana Commission on Human Rights.[42] However, "[n]o suspension authorized pursuant to this Subsection of this one-year prescriptive period shall last longer than six months."[43] Applying the suspension period to Jackson's case, he had 18 months from June 18, 2013—or December 19, 2014—to file suit for his claims of race and age discrimination under the LEDL. His lawsuit was not filed until May 26, 2015. Accordingly, Jackson's race and age claims brought under the LEDL are time-barred, and shall be dismissed.

---

[39] *Id.* at *4. The *Foreman* Court further noted that "Louisiana's employment discrimination prohibitions parallel federal provisions. Therefore, courts frequently use interpretations of federal statutes to guide interpretation of the state statutes." (citations omitted). *Id.* at n. 1.
[40] Doc. 32-4, p. 6.
[41] Doc. 32-5, p. 3.
[42] La. R.S. 23:303(D).
[43] La. R.S. 23:303(D).

B.    *Motion for Partial Summary Judgment*: Title VII Failure to Promote and Title VII and FMLA Retaliation Claims[44]

      1.    <u>Title VII Failure to Promote Claim Based on Race</u>[45]

In a Title VII failure to promote case such as this, where there is no direct evidence of DPS&C denying Jackson the promotion because of his race, the *McDonnell Douglas* burden-shifting framework applies.[46]   Under this framework, "a plaintiff challenging a failure to promote [claim] must first establish a prima facie case, demonstrating that (1) he was not promoted, (2) he was qualified for the position he sought, (3) he fell within a protected class at the time of the failure to promote, and (4) the defendant either gave the promotion to someone outside of that protected class or otherwise failed to promote the plaintiff because of his race."[47]   If the plaintiff makes this showing, then the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for its decision not to promote the plaintiff.[48]   "The defendant's burden during this second step is satisfied by producing evidence, which, 'taken as true, would permit the conclusion that there was a nondiscriminatory reason'" for the defendant's adverse hiring decision.[49]   If the defendant satisfies its burden, then the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that the defendant's reason is a pretext for race-based discrimination.[50]   A plaintiff may satisfy this burden by showing that his employer's stated

---

[44] Doc. 32.

[45] Jackson did not assert a federal age discrimination claim in his *Complaints* arising under the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1).   His age discrimination claim arises under Louisiana law.

[46] *McMullen v. Miss. Dept. of Public Safety*, 782 F.3d 251, 258 (5th Cir. 2015).

[47] *Autry v. Fort Bend Independent School Dist.*, 704 F.3d 344, 346-47 (5th Cir. 2013)(citing *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002)).

[48] *McMullen*, 782 F.3d at 258.

[49] *Price*, 283 F.3d at 720 (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (2000)).

[50] *Id.*

reasons are "false or unworthy of credence, and thus pretextual."[51]  In the alternative, a "fact finder can infer pretext if it finds that the employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected."[52]

Strictly for the purpose of this *Motion*, the DPS&C "assume[s] arguendo that Plaintiff can meet his prima facie case."[53]  Therefore, the Court's initial focus shall be on whether the Defendant can satisfy its burden of showing it had a legitimate, non-discriminatory reason for not promoting Jackson.

a.     DPS&C's Legitimate, Non-Discriminatory Reason

The Court finds that DPS&C has successfully satisfied its burden of showing it had a legitimate, non-discriminatory reason for not promoting Jackson.

According to the undisputed evidence in the record, the Department of Corrections' Human Resources Department ("HR") followed its normal process for posting the opening for the major corrections position in May of 2013.  In response to the announcement, several individuals applied for the vacancy and HR determined which individuals met the minimum qualifications for the position.  Along with Jackson, nine other applications were deemed to meet the minimum qualifications.  HR then sent the application packets for these ten individuals to LCIW to conduct the interviews and make the hiring decision.[54]

Once the committee received and reviewed the application packets, they selected seven of the ten applicants for interviews.[55]  After conducting the interviews, the

---

[51] *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 233 (5th Cir. 2015).
[52] *Rowe v. Jewell*, 88 F.Supp.3d 647, 663 (E.D.La. 2015)(quoting *Churchill v. Tex. Dep't. of Crim. Justice*, 539 Fed. Appx. 315, 318 (5th Cir. 2013)).
[53] In a footnote, Defendant concedes to the following: Jackson is an African-American; Avants, the individual who was promoted, is a Caucasian; and Jackson did not obtain the promotion.  Defendant specifically reserves its right to challenge whether Jackson was qualified for the position at a later date.  Doc. 32-1, p. 6, n. 38.
[54] Doc. 32-7, p. 17.
[55] Doc. 32-7, p. 18.

interviewers narrowed the field down to the top two people for the position.[56]   Three of the interviewers identified Brown-Garrison, an African American female, as their top pick for the position.[57]   Whereas Deputy Warden Moore identified Avants, a Caucasian male, as her first choice.[58]   Importantly, none of the interviewers selected Jackson as their top candidate.[59]

Deputy Warden Moore testified that she did not select Brown-Garrison as her first choice for several reasons.   For instance, Deputy Warden Moore explained that in 2013, Brown-Garrison had shown that she would not intervene if a fight occurred between inmates or inmates and staff.[60]   Because this major corrections position involved providing security, Brown-Garrison's unwillingness to intervene when an altercation erupted was a concern for Deputy Warden Moore.[61]   Additionally, Deputy Warden Moore explained that she was trying to change the culture of LCIW, so that long-term LCIW employees were not automatically promoted over other applicants who were more qualified and possessed a better work ethic, simply because they had worked at other prisons.[62]   Deputy Warden Moore further stated that she picked Avants as her top candidate over both Brown-Garrison and Jackson, because she had personal working experience with him and thought he had a good work ethic.[63]   Specifically, Deputy Warden Moore had worked with

---

[56] Doc. 32-7, p. 17.
[57] Doc. 32-7, p. 30.
[58] Doc. 32-7, p. 20.
[59] Deputy Moore testified that she could only recall who her top pick was, and that was Avants.  Doc. 32-7, p. 20.  Assistant Warden Thibeaux testified that Jackson was her third pick for the position. Doc. 32-8, p. 2.  Assistant Warden Carlin's Affidavit reflects that she selected Captain Brown-Garrison as her top choice. Doc. 32-10.
[60] Doc. 32-7, pp. 25, 31, and 34.  Deputy Warden Moore explained that Brown-Garrison would run from a fight, and if an altercation were taking place, "she would normally get there after it was handled or pretty much under control."
[61] Doc. 32-7, pp. 25 and 31.
[62] Doc. 32-7, pp. 25-26, 30-32.
[63] Doc. 32-7, pp.10, 12, 21, and 23.

Avants while he was serving as a member of the EHCC chase team searching for an LCIW inmate escapee; she stated that his performance in this capacity had impressed her.[64] As for Jackson, Deputy Warden Moore did not think that he took constructive criticism well, particularly with his report writing.[65]

Although the interview committee interviewed and selected the top applicants, they did not make the final hiring decision. The final decision belonged to Warden Rogers.[66] Of the top two candidates, Deputy Moore recommended that Avants be hired for the position.[67] Assistant Warden Thibeaux had previously informed Deputy Warden Moore that she would support the decision to promote Avants.[68]

Warden Rogers ultimately approved of Deputy Moore's recommendation.[69] The Warden attested to the fact that he was familiar with Avants' good reputation as a correctional officer.[70] He also thought Avants had proved he was a diligent and hard worker during the LCIW escape situation.[71] As such, Avants was hired and promoted to the major position in June of 2013.[72]

Based on the foregoing, the Court finds that DPS&C has successfully articulated a legitimate, non-discriminatory reason for not promoting Jackson. The burden now shifts to Jackson to produce sufficient evidence from which a reasonable trier of fact could conclude that the Defendant's reason for not promoting him was pretextual.

---

[64] Doc. 32-7, p. 21.
[65] Doc. 32-7, pp. 28 and 32.
[66] Doc. 32-8, pp. 3-4.
[67] Doc. 32-11, p. 1.
[68] Doc. 32-8, pp. 5-6 (Assistant Warden Thibeaux testified that ""Deputy Warden Moore and I had a discussion after the interviews, and I informed her that although my selection was Shawn Brown, if she wanted Avants, I would stand by her decision.").
[69] Doc. 32-11, p. 1.
[70] Doc. 32-11, p. 1.
[71] Doc. 32-11, pp. 1-2.
[72] Doc. 32-11, pp. 1-2.

b.    Was Defendant's Proffered Reason for not Promoting Jackson Pretextual?

In an attempt to satisfy his burden, Jackson makes two arguments.  First, he argues that he was, in fact, more qualified than Avants.

The Fifth Circuit has recognized that "[a] fact finder can infer pretext if it finds that the employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected."[73]  However, "[s]howing that two candidates are *similarly* qualified is insufficient" to make a showing of pretext.[74]  Instead, a plaintiff "must present evidence from which a jury could conclude that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'"[75]  Therefore, "unless the qualifications are so widely disparate that no reasonable employer would have made the same decision, any differences in qualifications are generally not probative evidence of discrimination."[76] The Fifth Circuit has held that "'better education, work experience, and longer tenure with [a] company do[es] not establish that he is clearly better qualified.'"[77]  "Thus, 'the bar is set high for this kind of evidence.'"[78]

Jackson claims that he was more qualified than Avants, because he had a college degree and 18 years of experience working in corrections, whereas Avants only had 16

---

[73] *Campbell v. Zayo Group, LLC*, 656 Fed.Appx. 711, 716 (5th Cir. 2016)(quoting *EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1444 (5th Cir. 1995)).
[74] *Toval v. Children's Hosp.*, 614 Fed.Appx. 170, 173 (5th Cir. 2015)(citing *Price v. Fed. Express Corp.*, 283 F.3d 715, 723 (5th Cir. 2002)).
[75] *Irvin v. Ascension Parish School Board*, Civil Action No. 15-518, 2017 WL 354854, *15 (M.D.La. Jan. 24, 2017)(quoting *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922-23 (5th Cir. 2010)(quotations omitted); *See also*, *Toval*, 614 Fed. Appx. at 173 ("Instead, 'the losing candidate's qualifications must leap from the record and cry out to all who would listen that he was vastly—or even clearly—more qualified for the subject job.'" (citation omitted)).
[76] *Id.*
[77] *Churchill v. Texas Dep't of Criminal Justice*, 539 Fed.Appx. 315, 321 (5th Cir. 2013)(citing *Price*, 283 F.3d at 723).
[78] *Irvin*, 2017 WL 354854, *15.

years of experience. He also argues that because Avants had never worked at LCIW, Jackson, being an internal applicant with five prior months of experience at LCIW, was more qualified. Jackson further contends that because he had more supervisory experience, including his supervision of Avants at some point in time at EHCC, he was the better candidate. On this point, the Court observes that the evidentiary record shows that Avants had 16 years of supervisory experience.[79] Finally, Jackson points to Avants' statement that he "honestly thought … [Jackson] would have gotten" the position instead of him as proof of Jackson being "clearly better qualified" for the position.[80]

The majority of the evidence upon which Jackson relies is precisely that which the Fifth Circuit has held does not establish that an employee is clearly better qualified. While it may be true that Jackson had more working and supervisory experience, and a higher educational degree than Avants, such factors alone will not satisfy Jackson's evidentiary burden. In fact, when the Court considers both Jackson's and Avants' years of experience, they are more similarly situated, than not. This, however, should not be surprising because all of the candidates who were interviewed for the major position met the minimum requirements for the vacancy. Although subjective criteria was considered in the promotion decision,[81] the Defendant has articulated in some detail a more specific reason for its decision to promote Avants.[82] Warden Rogers promoted Avants because

---

[79] Doc. 40-6, p. 2.
[80] Doc. 40-6, p. 5.
[81] In addition to subjective criteria, the applications, experience levels, violation report histories, leave usage, and interviews of each applicant were taken under consideration in deciding who to promote. Doc. 32-7, p. 24.
[82] The Fifth Circuit has been very clear about the fact that an employer's use of subjective criteria is insufficient evidence of pretext. *See Manning v. Chevron Chemical Co., LLC*, 332 F.3d 874, 882 (5th Cir. 2003)("[a]bsent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion on purely subjective criteria will rarely, if ever, prove pretext under Title VII.")(quotation omitted)).

of his work ethic, his reputation as a corrections officer, and his performance in the recovery of an inmate-escapee from LCIW.[83]   When asked why she did not select Jackson as her top choice, Deputy Warden Moore stated that he had issues with constructive criticism.  Ultimately, "[a]n employer must make judgments about individual qualifications to choose between candidates, and a plaintiff's argument that such choices are subjective does not prove pretext."[84]   To the extent that Jackson relies on Avant's belief that he thought Jackson would have been selected for the promotion, such a subjective belief, particularly by a non-decision maker in the hiring process, is not sufficient evidence to support a claim of race discrimination.[85]

For his second argument, Jackson makes the unsubstantiated argument that Deputy Warden Moore was the actual decision-maker in determining who was promoted to the major position.  The record shows that it was Warden Rogers, and not Deputy Warden Moore, who made the hiring decisions.  Warden Rogers stated that as the Warden of LCIW he is "the appointment authority at LCIW meaning that [he] ha[d] the authority to hire, fire and promote employees."[86]   He further explained that generally the department doing the hiring will recommend an applicant for the position after the application and interview process is completed.  From there the decision to approve or disapprove the recommendation lies solely with Warden Rogers.  Jackson argues that Deputy Warden Moore "predetermined" that Avants would be promoted and had "coached" him for the position before his interview; however, he has offered no competent

---

[83] Doc. 32-11, pp. 1-2.
[84] *Rowe v. Jewell*, 88 F.Supp.3d 647, 664 (E.D.La. 2015).
[85] *Thomas v. Louisiana Dept. of Social Services*, 406 Fed.Appx. 890, 897 (5th Cir. 2010).
[86] Doc. 32-11, p. 1.

summary judgment evidence[87] to create a genuine issue of material fact over this issue. Furthermore, Deputy Warden Moore explained that she encourages all who are interested in applying for open positions at LCIW to apply, which, in this case, would include Avants.[88]  Because Avants had indicated he would like to work at LCIW, Deputy Warden Moore called him about the job-opening, and told him to apply.[89]  The fact that Deputy Warden Moore encouraged Avants to apply for the major position did not strip Warden Rogers of his role as the final decision-maker.  Aside from Jackson's conclusory arguments and subjective belief otherwise, he has offered no competent summary judgment evidence to create a genuine dispute of material fact regarding who was the ultimate decision-maker.[90]

Based on the foregoing, the Court finds that Jackson has failed to offer evidence that would permit a reasonable juror to conclude that DPS&C's explanation for not

---

[87] Jackson cites to unsworn, and in one instance undated, written statements as support for this contention. Doc. 40-7 and Doc. 40-8. However, unsworn statements are not proper summary judgment evidence, and will not be considered by the Court in ruling on either of the *Motions.  Okoye v. University of Texas Health Sci. Ctr.*, 245 F.3d 507, 515 (5th Cir. 2001).  Even if the Court were to consider these written statements, at best they would suggest favoritism by Deputy Warden Moore.  Favoritism alone is not evidence of Title VII discrimination.  *See Pickens v. CLC of Vaiden, LLC*, Civil Action No. 3:06CV147, 2008 WL 480008, *3 (N.D. Miss. Feb. 19, 2008)("[T]he mere fact that an employee who was allegedly shown favoritism was white would not support a race discrimination claim, even if such favoritism had been established.");  *Williams v. C.J. Gayfers and Co.*, 11 F.Supp.2d 854, 858 (S.D. Miss. 1998)("the fact that an employee of one race is given more favorable treatment than an employee of a different race is no basis for a lawsuit under Title VII unless a plaintiff proceeds further and establishes that racial discrimination was a motivating factor behind the employer's [decision.]").

[88] Doc. 32-7, p. 9. (Deputy Warden Moore testified that "[a]nyone that has asked me about any positions, I always tell all – anybody, 'Apply.'  I still tell people, 'apply.'"); Doc. 40-6, p. 5.

[89] Doc. 32-7, pp. 9-10 (Deputy Warden Moore testified that "[Avants] had indicated that he was interest[ed] in coming to LCIW, and I did call him and tell him, 'Look, we have positions opening up.  Apply.'").

[90] The Court also finds it worth noting here that Jackson failed to address Defendant's additional argument that statistically, he could not prove that he was not promoted because of his race.  "A plaintiff may use statistical evidence in a disparate treatment case 'to show that an employer's justification for a discriminatory act is pretext.'"  *Hughes v. Dyncorp International, LLC*, 2016 WL 4191194, *6 (N.D. Miss. Aug. 5, 2016)(citation omitted).  Going on the offensive, the DPS&C offered undisputed evidence that of the two available major positions in 2013, one was filled by a Caucasian and the other was filled by an African-American.  DPS&C offered additional evidence showing that of the five available major positions from 2010 until 2015, one was filled by a Caucasian and the remaining four were filled by African-Americans.  As such, the statistical evidence further demonstrates a lack of pretext on the part of Defendant. Doc. 32-13.

promoting him is "false or unworthy of credence and thus pretextual."[91]  Accordingly, Jackson's Title VII failure to promote claim based upon race shall be dismissed.[92]

### 2. FMLA Retaliation Claim

Jackson claims that DPS&C retaliated against him by denying him 25 days of vacation time on January 8, 2015 because he took FMLA leave in January and February of 2014.[93]  In his *Opposition*, Jackson argues that he "believe[d]" the letter denying him leave in January of 2015 is direct evidence of retaliation.[94]  The January 8, 2015 letter states as follows:

> Your vacation for 2015 has been denied for the following reason(s) in accordance with LCIW Regulation 1-03-016 Employee Leave.
>
> Leave usage in the previous calendar year will be used to determine eligibility for vacations.
>
> D. ANNUAL LEAVE (VACATIONS, GENERAL)
> 5.c.)  FMLA can be considered in the determination of granting vacation time.
>
> Leave already taken by the respective employee during the prior twelve (12) months.
>
> You have 30 days to respond in writing to this denial letter.[95]

To constitute "direct evidence" of retaliation at this stage of the analysis, a comment or action "must be such that, 'if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions.'"[96]  Actions that require an inference to demonstrate retaliatory animus do not constitute direct evidence.  Although

---

[91] *Campbell v. Zayo Group, LLC*, 656 Fed.Appx. 711, 714 (5th Cir. 2016).
[92] Considering the findings herein, the Court shall not reach the issue of whether the Defendant is entitled to the "same actor inference."  Doc. 32-1, p. 9.
[93] Doc. 5, p. 6, ¶10.
[94] Doc. 40, p. 10.
[95] Doc. 32-16, p. 4.
[96] *Ray v. United Parcel Service*, 587 Fed.Appx. 182, 187 (5th Cir. 2014)(quoting *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993)).

the Court addresses the sufficiency of the letter as indirect evidence of pretext below, at this stage of the analysis, the content of the January 8, 2015 letter would still require that inferences or presumptions be made in order to demonstrate retaliatory animus.[97] Therefore, the Court finds that the January 8, 2015 letter is not direct evidence of retaliation.

In the absence of direct evidence, as is the case here, "[t]he Fifth Circuit applies the *McDonnell Douglas* framework to analyze retaliation claims under the FMLA."[98] Under this framework, an employee must first establish a prima facie case by showing that: "(1) [he] was protected under the FMLA; (2) [he] suffered an adverse employment decision; and either (3a) that [he] was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because [he] took FMLA leave."[99]  If the plaintiff carries his initial burden, then the burden shifts to the defendant "to articulate a legitimate nondiscriminatory or nonretaliatory reason for the employment action."[100]  If the employer articulates such a reason, then the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's reason "is a pretext for retaliation."[101]  Strictly for the purpose of this *Motion*, Defendant assumes that Jackson can satisfy the first element.  Therefore, the Court's analysis shall focus on whether Jackson can satisfy the second and third elements of his prima facia case.

---

[97] *Id.*
[98] *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001).
[99] *Id.*
[100] *Id.* (citing *Chaffin v. John H. Carter Co., Inc.*, 179 F.3d 316, at 319 (5th Cir. 1999)).
[101] *Id.* (citing *Chaffin*, 179 F.3d at 320).

To qualify as an "adverse employment action" for purposes of a FMLA retaliation claim, the action must be "materially adverse," meaning that it "would dissuade a reasonable employee from exercising his rights under the FMLA."[102] "The standard is objective, but the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters."[103] The Fifth Circuit has explained that in the context of retaliation, "[a] single denial of leave is not an adverse employment action when it affects leave on a specific date and time, but not the employee's amount of or right to take leave in general, because a reasonable employee would not have found the action to be materially adverse."[104]

In support of his allegation that he was denied leave because he took FMLA leave in January and February of 2014, Jackson testified that he requested to take 25 days of vacation in 2015, but was told he would only be allowed to take five vacation days for the year.[105] In spite of what Jackson was told, the evidence shows that he was actually permitted to take a total of 120.47 hours of annual or vacation leave in 2015.[106] Assistant Warden Wanda Miles, who prepared the letter denying Jackson's leave request in January of 2015, attested to the fact that the letter "did not mean that Capt. Jackson was not permitted to take vacation or not permitted to take annual leave. He could still take up to three days off in a row, and, with shift work, which is what Capt. Jackson was working at the time, he would still be able to have a block of time off that was longer than

---

[102] *Lushute v. Louisiana*, 479 Fed.Appx. 553, 555 (5th Cir. 2012).
[103] *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945-46 (5th Cir. 2015).
[104] *Ogden v. Potter*, 397 Fed.Appx. 938, 939 (5th Cir. 2010)(citation omitted).
[105] Doc. 32-4, p. 19. He also argues this point in his *Opposition.* Doc. 40, p. 9.
[106] Doc. 32-12, p. 1. Jackson also used a total 24.66 hours of sick leave and a total of 476.38 FMLA leave in 2015. In sum, Jackson took a total of 621.51 hours of leave in 2015.

three days in a row."[107]  The record reveals that Jackson did, in fact, utilize block times for vacation in May of 2015, and had seven consecutive days off.[108]  Given these undisputed facts, the Court finds that this single denial of Jackson's leave in January of 2015 does not amount to a materially adverse employment action by Defendants.

Jackson also argues that when he was denied vacation, he lost money that he paid for is pre-arranged trip.  He summarily argues that "[t]his loss of money is categorized as an adverse employment decision" and cites to the EEOC website.[109]  The Court finds no merit in Jackson's conclusory argument.

Had Jackson been able to show that he experienced an adverse employment action, the Court finds that his claim would still fail because he cannot satisfy the causation element.  A plaintiff may satisfy the causal connection element by showing "[c]lose timing between an employee's protected activity and an adverse action against him."[110]  Therefore, Jackson must provide substantial evidence that "but for" his use of FMLA leave in January and February of 2014, he would not have been denied vacation leave in January of 2015.  Jackson offers nothing other than the January 8, 2015 letter denying his request for 25 days of vacation time as support for his claim.  DPS&C points to the fact that this communication denying leave was done in accordance with DOC policy.  Assistant Warden Miles stated that the LCIW Regulation "allowed for FMLA leave

---

[107] Doc. 32-17, p.1.  *See also* Major Miles' February 5, 2015, memorandum discussing Jackson's explanation of his use of FMLA leave for his own personal use.  She explains that the letter was being submitted for review and final disposition of the 2015 vacation approval for Jackson.  Doc. 40-10.

[108] Doc. 32-12, p. 1.  Jackson took leave from May 8-10 and May 13-14.  Because Jackson was already scheduled to be off from May 11-12, he had seven days in a row off of work.

[109] Plaintiff cites to the following EEOC website for support: https://www.eeoc.gov/laws/guidance/retaliation-qa.cfm.  While this web-site does define and provide examples of materially adverse actions, it does not lend support to Jackson's conclusory argument.

[110] *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007)(quotation omitted).

to be considered in determining whether or not vacation time would be granted."[111]  There is no evidence that this was a departure from normal LCIW policy.[112]  Additionally, at least ten months of time had lapsed between Jackson's use of FMLA leave in January and February of 2014 and the denial of his vacation request in January of 2015.  The Court finds that without other evidence of retaliation, this time lapse of ten months makes it highly unlikely that retaliation occurred.[113]

Accordingly, Jackson's FMLA retaliation claim cannot survive summary judgment and shall be dismissed.

### 3.   Title VII Retaliation Claim[114]

Title VII claims of unlawful retaliation based on circumstantial evidence, as in this case, are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green.*[115]  As the Fifth Circuit recently explained, "[t]o establish a prima facie case of retaliation, an aggrieved employee must establish the following elements: '(1) [he] participated in an activity protected by Title VII; (2) [his] employer took an adverse employment action against [him]; and (3) a causal connection exists between the

---

[111] Doc. 32-17, p. 1.

[112] The Fifth Circuit has explained that other evidence of retaliation, such as "an employment record that does not support dismissal, or an employer's departure from typical policies and procedures," could aide in satisfying the causal requirement where the temporal proximity is not "sufficiently close."  *Feist v. La. Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 455 (5th Cir. 2013).  Such evidence is not present in this case.

[113] *Gibson v. Verizon Services Organization, Inc.,* 498 Fed.Appx. 391, 397 (5th Cir. 2012)("Seven months is too long to support an inference of a causal link, without additional evidence."); *Harvey v. Stringer*, 113 Fed.Appx. 629, 631 (5th Cir. 2004)("[The Fifth Circuit] has never held that a 10-month time lapse, on its own, is sufficient to satisfy the causal connection for summary judgment purposes."); *Raggs v. Miss. Power & Light*, 278 F.3d 463, 471-72 (5th Cir. 2002)(5 month lapse insufficient to show retaliation).

[114] The Court finds that the "Plaintiff's Contested Issues of Material Fact" on this particular claim are nothing more than legal conclusions.   As such, these statements are not in and of themselves, facts.  Doc. 40-1, pp. 4-5, nos. 30-41.

[115] *Vargas v. McHugh*, 630 Fed.Appx. 213, 216 (5th Cir. 2015)(per curium).

protected activity and the materially adverse action."[116]  "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision.  After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation."[117] An employee satisfies this burden by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive.[118]

In the *University of Texas Southwestern Medical Center v. Nassar*,[119] the Supreme Court explained that a plaintiff asserting a Title VII retaliation claim must meet a higher standard of causation than a plaintiff claiming Title VII discrimination.  Unlike a Title VII discrimination claim where a plaintiff need only show that an employer's discriminatory motive "was a motivating factor" for an adverse employment action, a plaintiff asserting a Title VII retaliation claim "must establish that his or her protected activity was a but for cause of the alleged adverse action by the employer."[120]  Therefore, to avoid summary judgment, the plaintiff must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity.[121]

Neither party disputes that Jackson's filing of an EEOC Charge constitutes a protected activity necessary to satisfy the first element of his prima facie case.[122]

---

[116] *Dana Taliaferro v. Lone Star Implementation & Electric Corp.*, no. 16-51152,  2017 WL 2544540, *2 (5th Cir. June 9, 2017)(quoting *Aryain v. Wal-Mart Stores Tex., LP*, 534 F.3d 473, 484 (5th Cir. 2008)).

[117] *Feist*, 730 F.3d at 454 (quoting *LeMaire v. Louisiana*, 480 F.3d 383, 288-89 (5th Cir. 2007)(internal citation omitted)).

[118] *Id.* (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013)).

[119] *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517 (2013).

[120] *Id.* at 2526 and 2534.

[121] *Feist*, 730 F.3d at 454 (quoting *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996)).

[122] "An employee has engaged in a protected activity when she has (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII."  *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372-73 (5th Cir. 1998)(quoting 42 U.S.C. § 2000e-3(a)).

Defendants focus their argument on Jackson's inability to satisfy the second factor to support his prima facie case. Additionally, Defendant DPS&C argues that it had a legitimate, non-retaliatory reason for its actions.

In the context of a Title VII retaliation claim, "an adverse employment action is an action that is 'materially adverse' that 'might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"[123] The materiality requirement is intended to "separate significant from trivial harms."[124] Hence, "this standard does not encompass the 'petty slights, minor annoyances, and simple lack of good manners' that employees regularly encounter in the workplace."[125] "To determine whether an action is materially adverse, we look to indicia such as whether an action affected [a] 'job title, grade, hours, salary, or benefits' or caused 'a job diminution in prestige or change in standing among … co-workers.'"[126]

Jackson has alleged that the following instances are retaliatory adverse actions: (1) Jackson was instructed to exit his office if a female employee entered; (2) he was denied a uniform in his size; (3) he was threatened with the possibility of losing his job and cautioned that he should return to the men's prison; (4) he was accused of calling women at the prison "bitches and whores"; (5) he was required to return to work with an essential functions form and doctor's excuse; (6) he was placed on the night shift; (7) he received two Letters of Instruction; (8) he was required to shorten his vacation by one

---

[123] *Thibodeaux-Woody v. Houston Cmty. Coll.*, 593 Fed.Appx. 280, 285 (5th Cir. 2014)(quoting *Burlington N. & Santa Fe Ry. V. White*, 548 U.S. 53, 68 (2006)).
[124] *Paul v. Elayn Hunt Correctional Center*, 666 Fed.Appx. 342, 346 (5th Cir. 2016)(quoting *Aryain*, 534 F.3d at 484 (quotation omitted)).
[125] *Id.* (quoting *Aryain*, 534 F.3d at 485 (quotation omitted)).
[126] *Blakney v. Gulfside Casino Partnership*, 2016 WL 7392038, *4 (S.D. Miss. Dec. 21, 2016)(quoting *Paul,* 666 Fed.Appx. at 346 (quotations omitted)).

day; (9) he was denied two days of compensatory time; and (10) he was denied funeral leave.[127]

The Court finds that incidents (1)-(5) above are not "materially adverse."[128]  None of these incidents affected Jackson's "job title, grade, hours, salary, or benefits."[129]  These incidents left Jackson's "duties … unchanged" and they did not cause her to "suffer[ ] a diminution in prestige or change in standing among her co-workers."[130]  At best, these incidents "fall into the category of 'petty slights, minor annoyances, and simple lack of good manners' … which the Supreme Court has recognized are not actionable retaliatory conduct."[131]  The Court now turns its attention to the remaining four incidents.

Jackson claims that his transfer to the night shift constituted an adverse employment action.  He has presented no other evidence that shows his assignment to the night shift fundamentally changed the nature of his job with LCIW, or affected his job title, grade, hours, salary, or benefits.  Jackson further testified that this shift change was only temporary.[132]  The Fifth Circuit has explained that a shift change, without more, does

---

[127] Doc. 5, p. 5, ¶9.

[128] Jackson testified that he was never written up or disciplined for wearing his Class A uniforms (Doc. 32-4, p. 12); Jackson testified that on one occasion during the same incident he was accused of calling the LCIW female employees "bitches and whores" and told "it might be best for [him] to return to Hunt … because LCIW is a hard place to work, and he was "going to end up getting terminated if [he] continue[d] with what [he was] doing (Doc. 40-4, p. 4); Jackson testified that every time he returned from FMLA, if an Essential Function form had not been faxed by his doctor to Human Resources, he had to submit the form (Doc. 40-4, pp. 8-9); there is no evidence supporting Jackson's allegation that he was told he had to leave his office every time a female entered; rather, the evidence shows that he was instructed not to have the door closed when a female employee or inmate was in his office alone with him (Doc. 40-3, p. 8; Doc. 32-15, pp. 1-2; Doc. 32-16, p. 2).

[129] *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009).  Defendant correctly points out that Jackson did not allege that these incidents affected his "job title, grade, hours, salary, or benefits" or caused a "diminution in prestige or change in standing" among his co-workers.

[130] *Id.*

[131] *Aryain*, 534 F.3d at 485 (quoting *White*, 548 U.S. at 68).

[132] Doc. 40-3, p. 10.  Jackson testified he had to cover for Brown-Garrison on the night shift for a tour over a two week period.  After that Jackson stated that he was able to return to his normal shift.

not constitute an adverse employment action.[133]   Accordingly, the Court finds that Jackson's shift change does not constitute an adverse employment action.

As for the two Letters of Instruction issued to Jackson by Assistant Warden Melanie Zedlitz on January 10, 2014 and February 6, 2014, it is undisputed that the letters were not disciplinary in nature.[134]   On both occasions, Assistant Warden Zedlitz issued the letters to inform Jackson of something he had done incorrectly and to remedy it in the future.[135]   Jackson also admitted in his deposition that such Letters of Instruction "rarely make it to a Human Resource folder."[136]   The undisputed evidence further shows that Assistant Warden Zedlitz did not know that Jackson had filed an EEOC Charge when she issued the letters.[137]   As such, the Court finds that Jackson's two Letters of Instruction were not adverse employment actions.

Jackson also contends that he experienced an adverse employment action when he was required to shorten his vacation by one day.  In December of 2013, Jackson was permitted to take four vacation days (from December 9 to December 14) and scheduled off for five consecutive days (December 15 to December 19).[138]   Due to shift coverage issues, Jackson's schedule was adjusted and he had to fill in for Brown-Garrison on the night shift on December 18, 2013.[139]   He was also scheduled to cover for Brown-Garrison

---

[133] *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998).  *See also Griffin v. Kennard Independent School District*, 2013 WL 5718873, *5 (E.D. Tex. Oct. 21, 2013)("the mere moving of Plaintiffs to the afternoon/night shift would not seem to qualify as an adverse employment action.").

[134] Doc. 32-15, pp. 1-2.  Assistant Warden Zedlitz attested to the fact that letters of instruction are not punitive, and are not considered in assessing whether an employee will receive a raise or promotion.  Doc. 32-15, p. 2.  Doc. 32-16, pp. 2-3.  *See Sarwai v. Principi*, 226 Fed.Appx. 334, 336 (5th Cir. 2007)(without any evidence to show that counseling letter had any disciplinary effect, counseling letter not deemed to be adverse employment action).

[135] Doc. 32-15, pp. 1-2.

[136] Doc. 40-3, p. 8.

[137] Doc. 32-15, p. 2.

[138] Doc. 32-14, p. 1.

[139] Doc. 32-9, p. 9.  Assistant Warden Harris stated that she needed Jackson to fill in the shift because there was no one else available at that time.  Doc. 32-9, p. 4.  Doc. 40-3, p. 8.

over a three day weekend from December 20 through December 23.[140]   Assistant Warden Harris stated that Jackson was given three additional compensatory days (K-days) off for any inconvenience this work schedule adjustment may have caused him.[141]   Because Jackson had to cover Brown-Garrison on the night-shift, his payroll period was adjusted for time-keeping purposes.   Due to this adjustment, Jackson's ability to take five consecutive days of "vacation" leave from December 9 through December 15 was affected.   When asked about this, LCIW's Human Resource Analyst, Thrinacia Jenkins ("Jenkins"), told Jackson that "he could not receive his fifth vacation day [on December 15] because it would give him more than the required hours for [a] two week pay period."[142]   Jenkins explained that he could use his fifth "vacation" day over the next two week pay period.   Ultimately, this became a moot issue because Jackson was not scheduled to work on December 15, 2013; therefore, he had still had the day in question "off", although it was not coded as a "vacation" day.[143]   Based on the foregoing, the Court finds that Jackson's claim that his vacation was shortened by one day fails to meet the materiality requirement for an adverse employment action.

The final incidents of alleged adverse employment actions are one and the same. Jackson testified that his claim of being denied two days of compensatory leave incorporated his allegation of being denied funeral leave.[144]   Jackson testified that in the early part of 2014, he had requested "funeral leave" to attend the funeral of his wife's grandmother.[145]   Jackson's request to use "funeral leave" was denied, so he used sick

---

[140] Doc. 32-9, p. 9; Doc. 32-14, p. 1.
[141] Doc. 32-9, pp. 8-9; Doc. 32-14, pp. 1-2.
[142] Doc. 32-14, p. 1.
[143] Doc. 32-9, pp. 6 and 9; Doc. 32-14, p. 1.
[144] Doc. 32-4, p. 17.
[145] Doc. 32-4, p. 13.

leave instead.[146]   He was not disciplined for taking sick leave or for attending the funeral.[147]  In the context of this claim, the Court finds that the denial of one type of leave, while permitting another type of leave, does not amount to an adverse employment action.

Having found that none of the alleged incidents constitute adverse employment action, the Court could stop its analysis here.[148]   And yet, the Court finds that even if Jackson could have satisfied his *prima facie* burden, the Defendant has satisfactorily met its burden of showing legitimate, non-retaliatory reasons for its actions.

As for his uniform claim, Jackson was asked what size uniform he needed, issued two new uniforms in the size he requested, and wore what he was issued.[149]  Assistant Warden Thibeaux actually saw Jackson in his uniform and thought that it fit him.[150]  It was Thibeaux's understanding from Jackson's supervisors that he did not like the BDU/polo shirt type of uniforms and elected to wear the older Class A uniforms.[151]  The Defendant also issued Jackson two Letters of Instruction.   It is worth reiterating that Assistant Warden Zedlitz, who issued the Letters, had no knowledge of Jackson's EEOC Charge at the time she issued the Letters.[152]   The first Letter was issued in response to an accusation of sexual harassment filed by a cadet against Jackson.[153]   LCIW wanted to make sure that Jackson took precautionary measures to protect himself from unfounded allegations of harassment in the future.[154]   In her *Affidavit*, Assistant Warden Zedlitz

---

[146] Doc. 32-4, p. 15.
[147] Doc. 32-4, p. 16.
[148] The Court further notes that Jackson made no attempt whatsoever to establish the third element necessary for his prima facie case of Title VII retaliation.
[149] Doc. 32-8, pp. 9-10.
[150] Doc. 32-8, pp. 10-11.  When asked how she knew the uniforms were in Jackson's size, Assitant Warden Thibeaux said when she saw him in his uniform it looked like it fit.  Doc. 32-8, pp. 9-11.
[151] Doc. 32-8, p. 11.
[152] Doc. 32-15, p. 2.
[153] Doc. 32-15, p. 1.
[154] Doc. 32-15, pp. 1-2.

explained that all male officers are cautioned against being alone with a female employee or offender.[155]  Officers are instructed to keep doors open, and the blinds on any windows open when speaking to another female employee or offender in their offices.[156]  As for the second Letter, Jackson missed a supervisor meeting and was instructed to attend future meetings or seek prior approval if he was going to be absent.[157]

The undisputed evidence shows that Jackson was required to come in on the evening of December 18, when he had originally been scheduled off, for the purpose of providing shift coverage at LCIW.   Assistant Warden Harris testified that "no one else was available at that time" and he was given three days of compensatory leave for any inconvenience this caused him.[158]   Additionally, Jackson was not granted permission to take "funeral leave" because the LCIW Employee Handbook delineates those persons for whom an employee may take funeral leave.[159]   Grandparents of one's spouse are not included in the list of those persons for whom funeral leave is permissible.[160]

Accordingly, the Court concludes that DPS&C has satisfied its burden of producing evidence of legitimate, nondiscriminatory reasons for its actions.

Based on the Court's findings, Jackson's Title VII retaliation claim shall be dismissed.

## III.    CONCLUSION

For the foregoing reasons, the *Motion for Partial Summary Judgment on Prescription and Prematurity*[161]and the *Motion for Partial Summary Judgment on*

---

[155] Doc. 32-15, p. 1.
[156] Doc. 32-15, p. 1.
[157] Doc. 32-15, p. 2.
[158] Doc. 32-9, pp. 4 and 9.
[159] Doc. 32-18, p. 24.
[160] Doc. 32-18, p. 24.
[161] Doc. 31.

*Plaintiff's Claims of Race Discrimination and Retaliation Under the FMLA and Title VII*[162]

filed by the Louisiana Department of Public Safety and Corrections and the Louisiana Correctional Institute for Women are hereby **GRANTED**. Plaintiff Freddie Jackson's claims against the Louisiana Department of Public Safety and Corrections and the Louisiana Correctional Institute for Women are hereby dismissed with prejudice.

Signed in Baton Rouge, Louisiana, on June 27, 2017.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[162] Doc. 32.